IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL K. DESMOND, in his capacity as Chapter 7 Trustee of the bankruptcy estate of MOO & OINK, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11 C 3545 |
| CHICAGO BOXED BEEF DISTRIBUTORS, INC.; SEAN CONNOLLY; DUTCH FARMS, INC., TIM BOONSTRA; LOU DONZELLI; and WINDY CITY FOOD DISTRIBUTORS, INC. | ) ) ) ) ) ) ) | Judge Ruben Castillo |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Moo & Oink, Inc. ("Moo & Oink") brings this suit against various individual and entity defendants alleging a myriad of federal and state law claims. (R. 93, Second Am. Compl.) Generally, Moo & Oink alleges that between January 2011 and May 2011, Chicago Boxed Beef, Inc. ("Chicago Boxed Beef"), Dutch Farms, Inc. ("Dutch Farms"), and Windy City Food Distributors, Inc. ("Windy City") (collectively, "Entity Defendants") purchased, sold, and offered to purchase and sell counterfeit meat products that infringed Moo & Oink's registered trademarks (the "Marks") with the intent to confuse and mislead the public into believing the products were genuine Moo & Oink products or had been sponsored or approved by Moo & Oink. (Id. ¶ 4.) Moo & Oink also alleges that Sean Connolly, Tim Boonstra, and Lou Donzelli (collectively, the "Individual Defendants") willfully and knowingly directed, controlled, or participated in the

1

purchases, sales, and offers for purchase and sale of the counterfeit meat products. (*Id.*)

Presently before the Court is a motion to dismiss the second amended complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6), filed by Dutch Farms, Boonstra, and Windy City

(collectively, "Dutch Farm Defendants"). (R. 102, Defs.' Mot. to Dismiss.) For the reasons

discussed below, the motion is denied.

## PROCEDURAL HISTORY

On May 26, 2011, Moo & Oink filed a seven-count complaint against Chicago Boxed

Beef, Connolly, and Dutch Farms (collectively, "Initial Defendants") alleging violations of

federal and Illinois trademark laws, deceptive trade practices, and unfair competition. (R. 3,

Compl. ¶ 6.) Contemporaneous with the filing of the initial complaint, Moo & Oink moved for

an ex parte temporary restraining order, an order to show cause why a preliminary injunction

should not issue, and an order permitting expedited discovery. (R. 12, Application for Ex Parte

Order.) On May 27, 2011, the Court ordered Initial Defendants to show cause why a preliminary

injunction should not issue. (R. 17, Ex Parte Seizure Order at 3.) Pending the order to show

cause hearing, Initial Defendants were temporarily restrained from (i) using the Marks in

connection with the importation, sale, offer , or distribution of any meat products that were not

genuine Moo & Oink meat products; (ii) using the Marks in any manner likely to cause others to

believe that Initial Defendants' products were connected with Moo & Oink or were genuine Moo

& Oink products; (iii) selling and/or otherwise distributing, passing off, inducing, or enabling

others to sell, distribute or pass off any merchandise which was not genuine Moo & Oink

merchandise as genuine Moo & Oink merchandise; (iv) making false or misleading statements

regarding Moo & Oink or its goods, or the relationship between Moo & Oink and Defendants;

2

(v) committing other acts calculated to cause purchasers to believe that Initial Defendants' products were genuine Moo & Oink products; (vi) shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving, disposing of or destroying in any manner meat products or packaging falsely bearing Moo & Oink Marks, and any and all discoverable material, and (vii) assisting, aiding, or abetting other persons or entities in engaging in or performing the previously described activities. (R. 17, Ex Parte Seizure Order at 4-5.) The Court also ordered (1) the seizure of all items bearing counterfeits of Moo & Oink's Marks remaining in Initial Defendants' control; (2) Initial Defendants to immediately allow Moo & Oink to inspect their facilities; and (3) Initial Defendants to engage in expedited discovery with Moo & Oink. (*Id.* at 5.) A show cause hearing was held on June 9, 2011, (R. 23, Min. Entry), and the Court entered a preliminary injunction order that same day, which was to remain in effect until the disposition of the case, unless otherwise ordered by the Court. (R. 25, Prelim. Inj. Order.) The Preliminary Injunction barred Initial Defendants from committing the actions outlined in items (i)-(iv) of the ex parte temporary restraining order. (*Id.*)

On June 6, 2011, Dutch Farms filed its answer to Moo & Oink's complaint and included a counterclaim alleging that Moo & Oink breached its obligation to pay Dutch Farms for goods purchased on account. (R. 41, Answer to Compl.) Plaintiff filed its first amended complaint on July 13, 2011. (R. 38, First Am. Compl.) The first amended complaint asserted the same claims as the original complaint, but added three additional defendants: Boonstra, a Dutch Farms employee; Donzelli, a Chicago Boxed Beef employee; and Windy City, a Dutch Farms affiliate and/or subsidiary. (R. 38, First Am. Compl.) Dutch Farms Defendants filed their answer to the amended complaint on July 26, 2011, asserting various affirmative defenses including setoff,

acquiescence, estoppel, naked license doctrine, and laches. (R. 47, Dutch Farms Defs.' Answer to First Am. Compl. at 26.) Additionally, Dutch Farms and Boonstra filed cross-claims against Chicago Boxed Beef, Connolly, and Donzelli. (*Id.* at 29-31.) Dutch Farms also maintained its breach of contractual obligations counterclaim. (*Id.* at 27-29.) On August 5, 2011, Connolly moved to dismiss the first amended complaint, (R. 53, Connolly's Mot.), and on August 31, 2011, Donzellli also moved to dismiss the first amended complaint and Dutch Farms' cross-claim, (R. 61, Donzelli's Mot.).

On or about August 24, 2011, certain creditors of Moo & Oink filed an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (*See* R. 88, Pl.'s Mot. to Substitute ¶ 2.) On September 30, 2011, the United States Bankruptcy Court for the Northern District of Illinois entered an Order for Relief [1] and appointed Michael K. Desmond ("Plaintiff") to serve as the Chapter 7 Trustee for the estate of Moo & Oink. (*Id.* ¶¶ 3, 4.) Moo & Oink subsequently moved to substitute Desmond as the Plaintiff. (*Id.*) Moo & Oink's motion was granted on May 1, 2012. (R. 91, Min. Entry.)

On March 1, 2012, the Court granted Connolly's and Donzelli's motions to dismiss. (*Id.*) The Court also granted Plaintiff leave to file a second amended complaint, (*id.*), which Plaintiff filed on April 2, 2012, (R. 93, Second Am. Compl.). The second amended complaint asserts the same claims as the first amended complaint and again names Connolly and Donzelli as defendants. (*Id.*)

---

[1] Several of Moo & Oink's trademarks were sold to a third party through a Uniform Commercial Code sale conducted by Moo & Oink's lender. (R. 93, Second Am. Compl. ¶ 14.) The claims asserted herein were specifically excluded from the sale and remain the property of the bankruptcy estate. (*Id.*)

In Count I, Plaintiff alleges that Defendants engaged in trademark counterfeiting and infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), by using Moo & Oink's Marks on Defendants' spare rib tip products, and that Defendants sold such products without the approval or consent of Moo & Oink. (*Id.* ¶ 31.) In Counts II and III, Plaintiff alleges that Defendants' acts constituted unfair competition, false designation of origin, false and misleading representations, and trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(a) and (c). (*Id.* ¶¶ 40, 44.) In Count IV, Plaintiff alleges that Defendants violated the Illinois Trademark Registration and Protection Act ("TRPA"), 765 Ill. Comp. Stat. 1036/1 *et seq.*, by selling and distributing goods bearing counterfeit Marks. (*Id.* ¶ 50.) In Count V, Plaintiff alleges that Defendants violated the TRPA by engaging in acts that created a likelihood of injury to Moo & Oink's business reputation and by diluting and tarnishing of the distinctive quality of Moo & Oink's famous Mark. (*Id.* ¶ 59.) In Count VI, Plaintiff alleges that Defendants' use of Moo & Oink's Marks on meat products such as spare rib tips constituted deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2 *et seq.* (*Id.* ¶ 64.) Specifically, Plaintiff alleges that such use (1) passed off Defendants' products as those of Moo & Oink; (2) created a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods; (3) created a likelihood of confusion or misunderstanding as to the source of, and affiliation, connection or association with, or certification by Moo & Oink; and (4) represented that Defendants' products have sponsorship and approval that they do not. (*Id.*) Finally, in Count VII, Plaintiff alleges that Defendants engaged in the common law tort of unfair competition by using the Marks with the intent to palm off Defendants' counterfeit meat products as originating from or having sponsorship, affiliation,

or approval of Moo & Oink in order to trade on the goodwill created by Moo & Oink. (*Id.* ¶ 73.)

On May 25, 2012, Dutch Farms Defendants moved to dismiss Plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 102, Defs.' Mot. to Dismiss.) That same day, Dutch Farms also moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on its affirmative defense of setoff and its counterclaim for unpaid goods sold and delivered to Moo & Oink in the amount of $143,458.60. (R. 103, Dutch Farms' Mot. at 1.) The Court addresses Dutch Farms' motion for summary judgment in a separate order issued concurrently with this memorandum opinion and order.

## RELEVANT FACTS

Established in the 1940's as Calumet Meat Company, Moo & Oink is a wholesale and retail meat distributor based in Chicago, Illinois. (R. 93, Second Am. Compl. ¶ 9.) Moo & Oink offers a variety of products, including a broad selection of meats as well as barbecue sauces, rubs, and other goods. (*Id.*) Moo & Oink alleges that its products comply with the strictest quality control standards, which has enabled it to generate substantial goodwill in its service marks and establish a reputation for freshness, quality, and consistency. (*Id.*) Moo & Oink's leading brand was the MOO & OINK trademark, which was first introduced in 1974. (*Id.* ¶ 10.) Moo & Oink has invested substantial resources in advertising and promoting products under the MOO & OINK trademark and has generated tens of millions of dollars in sales every year under that mark. (*Id.*) Moo & Oink filed for and obtained federal trademark registrations as well as Illinois State trademark registrations for its significant trademarks. (*Id.* ¶¶ 11-12.)

Until approximately three years ago, Chicago Boxed Beef was an authorized supplier of Moo & Oink's spare rib tips products. (*Id.* ¶ 15.) During that time, Dutch Farms regularly

6

purchased Moo & Oink products through its suppliers, including Chicago Boxed Beef. (*Id.*) In order to obtain Moo & Oink products, Dutch Farms was required to place its order with Moo & Oink exclusively and not with its suppliers. (*Id.*) After receiving an order, Moo & Oink would issue a purchase order directing its supplier to ship the desired product to the purchaser for resale. (*Id.*)

According to Plaintiff, Entity Defendants purchased, sold, and offered to purchase and sell counterfeit meat products which infringed Moo & Oink's registered trademarks with the intent to confuse and mislead the public into believing the products were genuine Moo & Oink products or had been sponsored or approved by Moo & Oink. (*Id.* ¶¶ 4, 16.) Plaintiff also alleges that Individual Defendants willfully and knowingly directed, controlled, or participated in the purchase, sales, and offers for purchase and sale of the counterfeit meat products. (*Id.* ¶ 4.) Specifically, Plaintiff alleges that as early as January 2011, Dutch Farms and Boonstra, its Director of Purchasing, engaged in direct transactions with Chicago Boxed Beef for the sale and purchase of spare rib tips packaged in Moo & Oink's boxes, despite having knowledge of the procedure for ordering and filling requests for Moo & Oink's products. (*Id.* ¶¶ 4, 17.) Chicago Boxed Beef did not discuss the use of these boxed spare rib tips with Moo & Oink before filling orders for Dutch Farms. (*Id* ¶ 18.) Plaintiff alleges that Connolly, who at various times described himself as the "Executive Vice President/COO" and "President" of Chicago Boxed Beef, personally communicated with Boonstra regarding Dutch Farms' requirements and personally oversaw the quantity, packing, delivery, and sale of Moo & Oink spare rib tips in counterfeit "Moo & Oink" boxes to Dutch Farms and Boonstra in February through May of 2011. (*Id.* ¶¶ 4, 19.) In April 2011, Donzelli, who assumed Connolly's role at Chicago Boxed

7

Beef after Connolly's departure, began corresponding with Boonstra and Dutch Farms regarding the counterfeit rib tips. (*Id.* ¶¶ 4, 21.) Despite being personally aware that Chicago Boxed Beef was packing the rib tips in Moo & Oink boxes without Moo & Oink's authorization, Donzelli personally arranged the delivery of counterfeit spare rib tips to Dutch Farms. (*Id.*)

On May 18, 2011, Moo & Oink informed Boonstra that it had discovered unauthorized cases of spare rib tips at a Walmart store in Waukegan, Illinois. (*Id.* ¶¶ 20, 25.) Within a few hours, Boonstra sent Connolly an email informing him that Moo & Oink had discovered the unauthorized cases and "tracked the establishment number back to" Chicago Boxed Beef. (*Id.*) Though Defendants were aware that Moo & Oink had learned of the alleged infringing activity, Chicago Boxed Beef and Dutch Farms continued to engage in the sale and purchase of Moo & Oink products without placing orders directly with Moo & Oink. (*Id.* ¶¶ 20, 26.) Specifically, on May 23, 2011, Boonstra emailed Donzelli seeking another load of 600-800 cases of spare rib tips. (*Id.* ¶ 26.) Donzelli replied the same day, confirming delivery of at least 600 cases later that week. (*Id.*) On May 24, 2011, Boonstra finalized the purchase by submitting to Chicago Boxed Beef a purchase order for 800 "Moo & Oink" brand spare tips. (*Id.*) On May 26, 2011, Chicago Boxed Beef ultimately supplied Dutch Farms with 700 cases of the product. (*Id.*)

Windy City, which Plaintiff alleges is a subsidiary or otherwise an affiliate of Dutch Farms, was among the largest purchasers of counterfeit spare rib tips from Dutch Farms. (*Id.* ¶ 24.) Windy City also sold or distributed Moo & Oink's products to third-party retailers, despite the fact that it knew or should have known that its sale and distribution of "Moo & Oink" spare rib tips were not authorized by Moo & Oink. (*Id.* ¶ 24.)

Plaintiff alleges that Moo & Oink was damaged by Defendants' wrongful use of Moo &

Oink trademarks because the purchasing public was likely to be induced into purchasing Defendants' goods in the erroneous belief that they were Moo & Oink's authentic goods, or that Defendants' goods were somehow endorsed, sponsored, or approved by Moo & Oink. (*Id.* ¶ 27.)

## LEGAL STANDARD

In deciding the instant motion, the Court assumes the veracity of the well-pled allegations in Plaintiff's second amended complaint, (R. 93, Second Am. Compl.), and construes all reasonable inferences in Plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To determine whether a complaint meets this standard, the "court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are well-pled, they are presumed true and the Court proceeds to determine whether they plausibly give rise to an entitlement to relief. *See id.* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) imposes "two easy-to-clear hurdles" that a complaint must satisfy in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555)) (internal citations and quotation marks omitted); *accord Iqbal*, 556 U.S. at 678. First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims alleged against them. This requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Concentra*, 496 F.3d at 776. To survive a motion to dismiss, the complaint must also include factual allegations which "plausibly suggest a right to relief, raising that possibility above a speculative level." *See id.* If a complaint does not satisfy these two criteria, "the plaintiff pleads itself out of court." *Id.*

"The plausibility standard . . . asks for more than a sheer possibility that a defendant acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the plausibility standard means that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* Thus, a motion to dismiss may be properly granted in favor of the moving party where the plaintiff does not allege a plausible entitlement to relief either by failing to provide the defendant with notice of plausible claims alleged against it or by asserting only speculative or conclusory allegations in the complaint.

## ANALYSIS

## I.    Plaintiff's allegations against Dutch Farms

### A.    Federal and State trademark infringement (Counts I, II, and IV)

"Congress passed the Lanham Act in 1946 to 'federalize' existing common law protection of trademarks used in interstate commerce." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001). Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the defendant:

> [W]ithout the consent of the registrant . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). The Lanham Act further imposes liability upon:

> Any person who, on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . by another person.

15 U.S.C. § 1125(a)(1)(A).

In order to prevail on a claim of trademark infringement and counterfeiting under 15 U.S.C. § 1114(1)(a), or unfair competition (or false designation) under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove two elements. *See* 15 U.S.C. § 1125(a); *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); *CAE*, 267 F.3d at 673-74. First, the plaintiff must show that "its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, the plaintiff must allege that the challenged mark is "likely to cause confusion among consumers." *Id.* However, "a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently

distinctive to warrant prima facie protection as a trademark." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 610 (7th Cir. 1986). The term "counterfeit mark" is defined as either: (1) a mark that is registered on the principal register in the United States Patent and Trademark Office's ("USPTO") principal register for use on the same goods and services for which the defendant uses the mark, 15 U.S.C. § 1116(d)(1)(B)(i) or (2) "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark," 15 U.S.C. § 1127; *see also* 15 U.S.C. § 1116(d)(1)(B)(ii). Additionally, in order to be "counterfeit," the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced. 15 U.S.C. § 1116(d)(1)(B).

Here, Plaintiff alleges that Moo & Oink's Marks are federally registered with January 29, 2013the USPTO and thus protected under the Lanham Act. (R. 93, Second Am. Compl. ¶ 11.) Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid. *See Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). Next, Plaintiff alleges that Dutch Farms, despite having been aware that it could only order meat products bearing the Marks by placing orders directly with Moo & Oink, purchased and sold spare rib tips bearing the Marks without Moo & Oink's authorization. (R. 93, Second Am. Compl. ¶ 22.) According to Plaintiff, this unauthorized use was likely to cause confusion in the minds of the public by leading the public to wrongly believe that the spare rib tips purchased and sold by Dutch Farms originated from Moo & Oink or that Moo & Oink had approved, sponsored, or otherwise associated itself with the Defendants' meat products. (*Id.* ¶ 32.) Plaintiff alleges that all of its meat products "complied with the strictest quality control standards, enabling Moo & Oink to establish and maintain, over many years, a reputation for

freshness, quality, consistency, and to generate substantial goodwill in its Moo & Oink service marks." (*Id.* ¶ 9.) However, as a result of Defendants' unauthorized sales, Plaintiff alleges that Moo & Oink had no control over the quality of meat products bearing its Marks. (*Id.* ¶ 34.) These allegations properly state a cause of action against Dutch Farms for trademark infringement , counterfeiting, and unfair competition under the Lanham Act.

For these reasons, Dutch Farm Defendants' argument that Plaintiff fails to state a claim because he has not alleged that products used by Defendants were different from those authorized by Moo & Oink is misplaced, and the cases cited in support are distinguishable. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark. For this purpose the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." *El Greco Leather Prods. Co. v. Shoe World*, 806 F.2d 392, 395 (2d Cir. 1986). In *El Greco,* the court found that grey-market shoes were not "genuine," despite having been manufactured for the plaintiff, because the plaintiff did not have an opportunity to inspect their quality or provide instructions for their disposal. *Id.* at 395-96. The fact that the defendant in that case did not manufacture or affix the trademark itself was irrelevant. The unauthorized sale of shoes bearing the plaintiff's mark was sufficient "use" for it to be liable for infringement. *Id.* at 396. Thus "[i]n order to maintain the genuineness of [the plaintiff's product], the quality standards must be controlled by the plaintiff." *Shell Oil*, 928 F.2d at 108. Once Moo & Oink severed its ties with Chicago Boxed Beef, it could no longer supervise, control, or oversee the quality of the spare rib tips ordered by Chicago Boxed Beef, packaged in containers bearing Moo & Oink's Marks, and distributed for eventual sale to retailers. Therefore, Plaintiff's allegations

13

that Defendants engaged in the sale, purchase, and distribution of goods bearing Moo & Oink's Marks properly state a cause of action for trademark infringement. *See Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *El Greco*, 806 F.2d at 396. As the Seventh Circuit noted in *Gorenstein*, 874 F.2d at 435, "[t]he purpose of a trademark, after all, is to identify a good or service to the consumer, and identity implies consistency and a correlative duty to make sure that the good or service really is of consistent quality, i.e., really is the same good or service."

Illinois state law also provides for a cause of action under the Illinois TRPA against any person who:

> uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this Act in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

765 Ill. Comp. Stat. 1036/60. Plaintiff also alleges that it filed and obtained Illinois state trademark registrations for its significant trademarks, and therefore satisfies the registration requirement of the TRPA. (R. 93, Second Am. Compl. ¶ 12.)

The purpose of a trademark "is to provide the consuming public with a concise and unequivocal signal of the trademarked product's source and character." *Draeger Oil, Inc. v. Uno-Ven Co.*, 314 F.3d 299, 301 (7th Cir. 2002). A trademark thus serves as an indicator of origin, assuring customers that the goods sold are of a uniform nature and quality. *See, e.g., Geneva Int'l Corp. v. Petrof, Spol, S.R.O.*, 608 F. Supp. 2d 993, 1003 (N.D. Ill. 2009). However, this "function is thwarted if the quality and uniformity of the trademarked product are allowed to vary significantly without notice to the consumer." *Draeger Oil*, 314 F.3d at 301 (internal

citations omitted); *see also Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1992) ("The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another."). Because the harm alleged in this case concerns Moo & Oink's ability to supervise the quality of spare rib tips sold and distributed under its Marks, the fact that Moo & Oink has not alleged that the meat products shipped by the Defendants were otherwise materially different or came from unauthorized suppliers is of no import. Even if the meat contained in the unauthorized packages originated from approved manufacturers, they cannot be considered "genuine" Moo & Oink products if Moo & Oink had no ability to ensure their quality. *See Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) ("[i]n order to maintain the genuineness of [the plaintiff's product], the quality standards must be controlled by the plaintiff."); *see also Ford Motor Co. v. Cook*, No. 91 C 8273, 1992 WL 220614, at *5 (N.D. Ill. Sept. 3, 1992) (finding for purposes of preliminary injunction hearing that plaintiff's automobile grilles were not genuine because they had not gone through the usual inspection process and were obsolete).

Dutch Farm Defendants rely principally on two cases to support their position that Plaintiff's complaint should be dismissed due to his failure to allege that the products shipped by Defendants were different from authorized Moo & Oink meat products: *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987), and *Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F. Supp 470 (S.D.N.Y. 1984). In both of those cases, however, the court specifically noted that the plaintiff's ability to control the quality of the product distributed with

its marks was not at issue. *See NEC Elecs.*, 810 F.2d at 1509 (finding that "because [the defendant] and [plaintiff] are commonly controlled, there is no danger to the latter in being unable to control the quality of the former's products"); *Diamond Supply*, 589 F. Supp at 475 (finding that goods sold by the defendant were genuine goods of the plaintiff in part because the defendant still had the ability to guarantee the quality of its products). *Diamond Supply* is further distinguishable because the court in *Diamond Supply* issued its opinion as a ruling on a bench trial, which required the court to make findings of fact and conclusions of law. *Id.* at 471. It did not address the sufficiency of the plaintiff's complaint under Rule 12(b)(6).

Here, by contrast, Plaintiff has specifically alleged that it *did not* have the ability to oversee the quality of spare rib tips shipped in Moo & Oink packages after its relationship with Chicago Boxed Beef ended. (R. 93, Second Am. Compl. ¶ 34.) Dutch Farms and Moo & Oink are not commonly controlled entities, nor is there any indication that Defendants in this case had a process, or even the ability, to guarantee the quality of Moo & Oink's products. Where, as here, the plaintiff alleges that the defendants' unauthorized distribution of goods bearing its marks has deprived it of the ability to control, supervise, or oversee the quality of good issued under those marks, the plaintiff is plausibly entitled to relief under Illinois State and federal trademark laws. *See A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 691-92 (1923) (finding the manufacturer liable for trademark infringement despite the fact that the goods were genuine and bore the plaintiff's true mark because the plaintiff's reputation was at stake based on the character of the goods, and the value of the plaintiff's trademark could have been entirely destroyed by the importation of goods whose quality and contents were beyond the plaintiff's control). Although Plaintiff does not identify in his complaint specific quality control standards

16

that Moo & Oink maintained through its authorized suppliers, the Court finds, at this stage of the proceedings, that Plaintiff's complaint satisfies the requirements of Rule 8 based on his allegations that Moo & Oink (1) maintained strict quality control standards over products distributed under its Marks, and (2) that Defendants' unauthorized sale and distribution of meat products bearing its Marks deprived it of the ability to exercise that control.

## B.  Federal and State trademark dilution (Counts III and V)

Plaintiff also claims that Defendants are liable for trademark dilution under both the Lanham Act, 15 U.S.C. § 1125(c) (Count III), and the TRPA, 765 Ill. Comp. Stat. 1036/65(a) (Count V).  Under the Lanham Act, "[c]ourts recognize two principal forms of dilution: tarnishing and blurring." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000).  Dilution by tarnishing occurs "when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product." *Id.* (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 n.7 (9th Cir. 1998).  Dilution by blurring occurs "when consumers see the plaintiff's mark used on a plethora of different goods and services, . . . raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* (quoting *Hormel Foods Corp. v. Jim Henson Prod., Inc.*, 73 F.3d 497, 506 (2d Cir. 1996)) (internal quotation marks omitted); 15 U.S.C. § 1125(c)(2)(B) (defining dilution by blurring as an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.").

To prevail on a claim of federal trademark dilution, Plaintiff must show that: (1) Moo & Oink's Marks are famous; (2) Dutch Farms adopted its Mark after Moo & Oink's Mark became

famous; (3) Dutch Farm's mark is likely to cause dilution of Moo & Oink's Marks; and (4)

Dutch Farms is using its mark in commerce for commercial purposes. *See Eli Lilly & Co.*, 233

F.3d at 468; 15 U.S.C. § 1125(c)(2)(A). Dilution can occur "regardless of the presence or

absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. §

1125(c)(1). Similarly, Illinois State law provides a remedy to "[t]he owner of a mark which is

famous . . . against another person's commercial use of a mark or tradename, if the use begins

after the mark has become famous and causes dilution of the distinctive quality of the mark."

765 Ill. Comp. Stat. 1036/65; *see also Kern v. WKQX Radio*, 529 N.E.2d 1149, 1156 (Ill. App.

Ct. 1st Dist. 1988).

      Plaintiff's allegations are sufficient to sustain claims against Dutch Farms under both the

Lanham Act and the TRPA. With respect to Plaintiff's federal dilution claim, Plaintiff's

complaint is somewhat lacking in clarity insofar as exactly which theory of dilution it

pleads—blurring, tarnishing, or both.[2] However, the allegations in Plaintiff's complaint are

sufficient to state a claim for dilution by tarnishing. First, Plaintiff has alleged that the Marks are

famous. (R. 93, Second Am. Compl. ¶¶ 9-10, 13.) Second, Plaintiff states that from January

through May 2011, Dutch Farms adopted the Marks by shipping meat products in Moo & Oink

packaging without Moo & Oink's authorization. (*Id.* ¶ 22.) As these transactions are alleged to

have occurred after the Marks became famous, the second prong is therefore satisfied. Third,

Moo & Oink has alleged that the unauthorized use of the Moo & Oink Mark was likely to induce

---

    [2] Plaintiff alleges that Defendants' actions "were likely to dilute *and* tarnish the
distinctive quality of the famous Moo & Oink Marks." (R. 93, Second Am. Compl. ¶ 44)
(emphasis added). As explained above, "tarnishing" is a species of dilution, not a separate basis
for a claim.

the public into believing that they were purchasing Moo & Oink's authentic goods, or that Defendants' goods were endorsed, sponsored, or approved by Moo & Oink. (*Id.* ¶ 27.) Finally, Plaintiff alleges that the products entered commerce through Dutch Farms's sale of the meat products to Windy City, which subsequently distributed the products to third-party retailers. (*Id.* ¶ 24.) Accordingly, the allegations in the complaint give rise to a plausible entitlement to relief under 15 U.S.C. § 1125(c).

### C.    Plaintiff's UDTPA & unfair competition claims (Counts VI and VII)

Counts Six and Seven of Plaintiff's complaint assert claims of common law unfair competition and deceptive trade practices pursuant to the UDTPA, 815 Ill. Comp. Stat. 510. Specifically, Plaintiff alleges that Defendants engaged in deceptive trade practices by (1) passing off the products it purchased from Chicago Boxed Beef as those of Moo & Oink; (2) creating a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of the goods; (3) creating a likelihood of confusion or of misunderstanding as to the source of, affiliation, connection or association with, or certification by Moo & Oink; and (4) representing that the products have sponsorship or approval that they do not. (R. 93, Second Am. Compl. ¶ 64.) Plaintiff also alleges that Defendants engaged in unfair competition by using Moo & Oink's Marks "with the intent to palm off Defendants' counterfeit meat products as originating from or having the sponsorship, affiliation or approval of Moo & Oink in order to trade on the goodwill created by Moo & Oink in the Moo & Oink Marks." (*Id.* ¶ 73.)

Under the UDTPA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; and (3) causing a likelihood of confusion or of

19

misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a). Where, as here, the "plaintiff's factual allegations under the UDTPA also form the basis for the plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)). Therefore, Plaintiff's UDTPA claim against Dutch Farms "must rise or fall based on [his] Lanham Act claim." *Dynamic Fluid Control Ltd. v. Int'l Valve Manuf., LLC*, 790 F. Supp. 2d 732, 739 (N.D. Ill. 2011) (quoting *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998)). Additionally, as the UDTPA is "merely a codification of the common law of unfair competition," the Court need not address Plaintiff's common law unfair competition claim separately. *Mars, Inc. v. Curtiss Candy Co.*, 290 N.E.2d 701, 704 (Ill. App. Ct. 1st Dist. 1972); *MJ & Partners Restaurant Ltd. Partnership*, 10 F. Supp. 2d at 929 ("[T]he common law unfair competition claim need not be separately addressed since it is codified by the [UDTPA]."); *see also La Zaza Trattoria, Inc. v. Lo Bue*, No. 12 C 135, 2012 WL 3308846, at *3 (N.D. Ill. Aug. 10, 2012) ("UDTPA codifies common law unfair competition and does not need to be analyzed separately."). Given the above finding that Plaintiff has sufficiently pleaded claims of counterfeiting, false designation, and trademark dilution against Dutch Farms, the Court finds that Plaintiff's complaint also states common law claims of unfair competition and deceptive trade practices against Dutch Farms . *See, e.g., La Zaza Trattoria*, 2012 WL 3308846, at * 3.

**II.      Plaintiff's allegations against Windy City**

Plaintiff also alleges that Windy City, "a subsidiary or otherwise an affiliate of Dutch Farms," was among the largest purchasers by volume of counterfeit spare rib tips from Dutch Farms. (R. 93, Second Am. Compl. ¶¶ 4, 24.) According to Plaintiff, Windy City sold or distributed counterfeit meat products bearing Moo & Oink's marks to well-known third party retailers, including Walmart. (*Id.* ¶ 24.) According to Plaintiff, Windy City knew or should have known, based on its affiliation with Moo & Oink, that its sale and distribution of Moo & Oink spare rib tips were not authorized. (*Id.*)

Windy City's mere affiliation with Dutch Farms, without more, does not provide a basis for liability. As a general rule, "a parent corporation may not be held to account for the liabilities of a subsidiary unless the legal separateness of parent and subsidiary has been disregarded in a wide range of corporate matters." *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir. 1989); *Tracy v. Jewel Food Stores, Inc.*, No. 99 C 2736, 2002 WL 370209, at *3 (N.D. Ill. Mar. 8, 2002). In this case, however, Plaintiff does not bring claims against Windy City solely based on the fact that it is a subsidiary or affiliate of Dutch Farms. Rather, Plaintiff alleges in his complaint that Windy City was one of the largest purchasers of the counterfeit spare rib tips, that it purchased from Dutch Farms spare rib tips bearing the Moo & Oink Mark, and that it subsequently distributed those spare rib tips to third-party retailers. The Court finds these allegations sufficient to sustain claims of trademark infringement, false designation, and trademark dilution. Plaintiff's allegations therefore properly state claims of common law unfair competition and deceptive trade practices under the UDTPA.

### III. Plaintiff's allegations against Tim Boonstra

Plaintiff's also seeks to hold Boonstra, individually liable for the alleged infringing

activity. The Seventh Circuit has held that absent some "special showing," individuals are not ordinarily liable for the infringement of their corporation, even where that infringement is committed under the officer's general direction. *Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926); *see also Syscon, Inc. v. Vehicle Valuation Svcs., Inc.*, 274 F. Supp. 2d 975, 976 (N.D. Ill. 2003) ("Despite its vintage, *Dangler* remains the law of this Circuit."); *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 857 (N.D. Ill. 2009) (applying the "special showing" requirement of *Dangler* "[c]onsistent with the weight of authority"). Such a special showing is made where the individual "acts willfully and knowingly — that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability." *Dangler*, 11 F.2d at 947.

Courts that have found the "special showing" requirement met have generally done so where the individual defendant is either an officer or the sole owner of the infringing entity. *See, e.g.*, *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004) (corporation's owner found "suable" where plaintiff presented evidence that defendant may have been personally involved in the commission of the tort by his corporation); *Lang Exterior, Inc. v. Lang Windows, Inc.*, No. 11 C 5517, 2012 WL 3545703, at *3 (N.D. Ill. Aug. 16, 2012) (special showing requirement satisfied where individual defendant founded the company she used to infringe upon the plaintiff's marks); *Syscon*, 274 F. Supp. 2d at 977 (plaintiff stated a claim against company president by alleging that he "personally directed and participated in allegedly infringing activity, as well as personally authorizing that activity."). However, courts have also recognized that

being an officer is neither necessary nor sufficient to allow for the imposition of individual liability:

> As the court reads [*Syscon, Inc.*, 274 F. Supp. 2d at 975, and *Peaceable Planet, Inc.*, 185 F. Supp. 2d at], status as an officer of a corporation that has allegedly infringed a copyright, without more, is not a basis for liability as a contributory infringer; instead, the alleged contributory infringer must have acted 'willfully or knowingly' or must have 'personally participated' in the alleged infringement. None of these cases suggest, however, that one *must* be an officer in order to be held liable as a contributory infringer.

*Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814, at *15 (N.D. Ill. July 23, 2004). *see also Century 21 Real Estate, LLC v. Destiny Real Estate Properties*, No. 4:11-CV-38 JD, 2011 WL 6736060, at *7 (N.D. Ind. Dec. 19, 2011) ("[A]bsent allegations or proof of any facts that establish [an officer's] personal involvement in the infringement, through control or approval of the company's acts, [the officer] may not be held personally liable for [the defendant's] infringement.").

In this case, Plaintiff alleges that Boonstra, Dutch Farms's Director of Purchasing, knowingly and willfully directed, controlled, or participated in the purchases, sales, and offers for purchase and sale of counterfeit meat products. (R. 93, Second Am. Compl. ¶ 4.) Specifically, Plaintiff alleges that on March 15, April 15, May 15, and May 30, and throughout June 2011, Boonstra communicated directly with Connolly, an employee of Chicago Boxed Beef, to plan the delivery of counterfeit meat products bearing Moo & Oink's Marks. (*Id.*, ¶¶ 18-19.) Plaintiff states that over the course of the scheme, several thousands of boxes of spare rib tips packaged in Moo & Oink boxes were sold as a result of these transactions, including at least 7,000 boxes ordered by Boonstra in February 2011. (*Id.* ¶¶ 20, 22.) Plaintiff further alleges that Boonstra was aware that genuine Moo & Oink spare rib tips could only be ordered directly from Moo & Oink,

not from Chicago Boxed Beef. (*Id.* ¶ 22.) According to Plaintiff, Boonstra also was aware that the natural and necessary result of these unauthorized purchases was the sale of counterfeit meat products to Dutch Farms's customers, including Windy City. (*Id.*) Finally, Plaintiff alleges that Boonstra continued to engage in the purchase of counterfeit meat products even after being informed by Moo & Oink that Chicago Boxed Beef was not authorized to make such sales. (*Id.* ¶ 23.) Specifically, Plaintiff asserts that five days after being notified by Moo & Oink's agent that Moo & Oink had discovered the unauthorized transactions, Boonstra sought an additional 600-800 cases of spare rib tips from Chicago Boxed Beef. (*Id.* ¶¶ 23–26.)

Plaintiff's factual allegations against Boonstra are sufficient to state a claim for individual liability against him under the Lanham Act, TRPA, UDTPA, in addition to the common law of unfair competition. "[C]ourts have routinely denied motions to dismiss where the plaintiff alleged that an individual officer was personally involved in making or selling an infringing product." *Lang Exterior, Inc.*, 2012 WL 3545703, at *3 (citing *Peaceable Planet, Inc.*, 362 F.3d at 994 (7th Cir. 2004); *TRT Transp., Inc. v. Chicago Trolley Rentals, Inc.*, No. 11 C 3693, 2011 WL 4585580, at *3 (N.D. Ill. Sept. 30, 2011) (denying motion to dismiss where the officer allegedly "actively participated in the wrongful acts," and "[i]t c[ould] be plausibly inferred . . . that [he] may have [had] control over the operations at [the company] and may have some personal involvement in the activities of [the company]"); *C.S.B. Commodities, Inc.*, 626 F. Supp. 2d at 857). Although Plaintiff here does not allege that Boonstra was an owner, co-founder, or officer of Dutch Farms, Boonstra's official title, as the Court has noted, is not dispositive of whether he may be held individually liable for Dutch Farms's alleged infringement. Boonstra's alleged actions through his role as Director of Purchasing are sufficient

24

to establish that he was personally involved in the alleged scheme and that he acted knowingly and willfully. To require anything more would go beyond the requirements of Rule 8(a)(2). *See Do It Best Corp.*, 2004 WL 1660814, at *15 (recognizing *Dangler* as authoritative but finding that because it "apparently involved a judgment on the merits, rather than a motion to dismiss" and "did not involve application of Rules 8 or 12(b)(6)," which were adopted fourteen years later, "*Dangler* arguably sets forth an evidentiary standard [and not] a heightened pleading requirement for contributory copyright infringement claims").

Dutch Farm Defendants have attached to their reply brief what purports to be an email thread between Boonstra and Martin Collins, an agent of Moo & Oink. According to the Dutch Farm Defendants, this thread demonstrates that although Moo & Oink inquired about the shipments, it gave no indication to Boonstra that there was anything wrong with purchasing Moo & Oink rib tips from Chicago Boxed Beef. This document, however, is not properly before the Court at this stage of the proceedings. When considering a motion to dismiss, the Court looks to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002). "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (quoting *Wright v. Ass'n Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). This narrow exception is "aimed at cases interpreting, for example, a contract" and "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "This rule–which typically applies to attachments to motions to

dismiss–logically extends to documents attached to a plaintiff's response." *Metz v. Joe Rizza Imps., Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (citing *Krok v. Burns & Wilcox, Ltd.*, No. 98 C 5902, 1999 WL 262125, at *6 (N.D. Ill. Apr. 16, 1999)).

Although Plaintiff's complaint specifically refers to communication between Collins and Boonstra on the morning of May 18, 2011, the communications included in Dutch Farms Defendants' reply brief are not central to Plaintiff's claim. Plaintiff's complaint refers not to any general inquiries regarding Dutch Farms's purchases, but rather specific statements conveyed by Collins to Boonstra that Collins had discovered counterfeit spare rib tips at a Wal-Mart in Waukegan, Illinois. At this stage in the proceedings, the Court declines to make any determinations of fact regarding whether the email thread is the *only* communication that took place that day between Collins and Boonstra, or whether the thread demonstrates that Boonstra was in fact not aware that purchases of Moo & Oink products from Chicago Boxed Beef were inappropriate. Such issues may properly be raised on summary judgment after both parties have had the opportunity to engage in more thorough discovery. At this juncture, the Court finds that the allegations in Plaintiff's complaint create a plausible inference that Boonstra personally participated in and knowingly directed the purchase of infringing products. Dutch Farms Defendants' Motion to Dismiss with respect to Boonstra is therefore denied.

## CONCLUSION

For the reasons stated herein, Dutch Farm Defendants' Motion to Dismiss (R. 102) is

DENIED.

ENTERED:

**Judge Ruben Castillo**

**Date: January 29, 2013**